INOCENCIA PICÓN RIVERA, Plaintiff and Appellant, v. CENTRAL CAMBALACHE, INC., Defendant and Appellee.

No. 6572.   Argued March 19, 1935.—Decided May 20, 1935.

Isaías M. Crespo for appellant.   Félix Santoni for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

In an action of denial of servitude the plaintiff alleged in her complaint in substance that she was the owner of a tract of land of one acre, located in the ward of Sabana Hoyos, within the municipal district of Arecibo, which she had acquired by inheritance more than thirty years ago, and that the defendant, a corporation engaged in Arecibo in the grinding of cane, owned a railroad track running over part of plaintiff's tract without her consent and to her injury. She further alleged that she had requested the defendant to remove the track, without success, for which reason she prayed the court to order the defendant to remove the track and to pay the costs.

In its answer the defendant denied that the track had been laid without authorization and on the contrary alleged that it had been laid with the consent of the plaintiff and that of Santiago Picón more than twenty years back. It denied having caused any damage and that it had been requested to remove the track.

As defenses it pleaded, in short, as follows:

That the plaintiff together with Santiago Picón established a right of way in perpetuity in favor of the defendant for the laying of a railroad track over the parcel of land jointly owned by them, and that at the time of the division of the jointly owned land the plaintiff had had personal knowledge of the existence of the track, which is apparent, for more than twenty years, she being estopped from impugning the right of way and the track.

That, irrespective of any right that the plaintiff had or might have had to the land over which the track is laid, the defendant had acquired the servitude by prescription, under section 544 of the Civil Code, the defendant having had the possession thereof for more than twenty years.

That prior to the construction of the track the land in that zone was not worth much. Its value increased by reason of

such construction effected by the defendant in good faith, with the expenditure of large sums of money "to the benefit of the land of the plaintiff who was enabled to enlarge the extent and variety of the crops."

The case went to trial. As regards plaintiff's claim to the ownership of the acre of land over which the track was laid, the apparent existence of the latter, and the passage over the same of the defendant's trains carrying canes and wood, there is no controversy. The issue is whether or not a real right of way was established, and therefore whether or not the track was and continues to be lawfully laid over the plaintiff's tract and whether or not, under the circumstances, she is estopped at all from denying the servitude. In order to determine such issue it becomes necessary to analyze and weigh the evidence heard.

The first witness to take the stand was the plaintiff herself, Inocencia Picón. At the time of the trial she was more than sixty years old. She grew up on the property. Her parents died there and she went on living and still lives there. The track covers one-fourth of an acre and has been laid there for twenty or twenty-two years. She gave permission to Remigio Badía, who was accompanied by Manolo Paz, for the passage of trains during four years. She was paid twenty-five dollars as compensation for the destruction of her plants. Nothing more has been given to her. She has not received a cent by reason of the track.

She was insistently cross-examined by the attorneys for the defendant and always maintained that what she granted was an authorization for four years. She knew that Paz was a notary. She did not know how to sign. She first stated that she did not remember whether any instrument was executed. She then acknowledged that she had authorized Remigio Martínez to sign and immediately she explained: "For the payment of the money." . . . . . "Nothing more than a little note for the money they gave me, the twenty-five dollars for the plants."

When she was asked why she waited so long to make her claim, her answer was: "Because I see now that I need it most and now I ask for it."

To the question: "Notwithstanding what you say, remember well, did you not authorize a servitude in perpetuity? Do not forget that you are an old woman and that oaths are binding," she answered thus: "Before God, it is justice. I can not tell a lie."

Santiago Picón, brother of the plaintiff, was then called to the stand. It appears from his testimony that his parents on their death left a parcel of land, and each of the children received an acre. The plaintiff is the only one who still has her acre and it is over it that the track is laid. He stated that he sold his portion before the laying of the track. He was present on the day Remigio Martínez Badía and Manuel Paz had a conversation with the plaintiff. "I know that they drew up a paper, I know nothing about instruments . . . . . They gave her twenty-five dollars . . . . . Because there were small crops planted on the track, banana, orange, and avocado trees . . . . . royal and 'cogollo' palms . . . . . I reckon that they might very well be worth the twenty-five dollars."

We transcribe from his cross-examination the following:

"Q. When those papers were signed in the presence of Notary Paz Urdaz, your sister, and yourself, what was the reason of your intervention in that agreement? Had you not ceased to be the owner of the acre?—A. What happened was that I was living with her, taking care of her, and I signed for her.—Q. Do you know how to sign?—A. I do not, but somebody else signed for me.—Q. Whom did you authorize, Remigio Martínez?—A. Yes, sir.—Q. Did you authorize Remigio Martínez to sign that instrument in connection with the track that was laid?—A. Yes, sir.—Q. Was Inocencia there?—A. Yes, sir.—Q. Did Inocencia sign?—A. I do not remember whether she did.—Q. Does she know how to sign.—A. She does not.—Q. Who signed for her?—A. I do not remember who did.—Q. Was not Remigio Martínez there?—A. He was."

Pedro Torres, a neighbor of the plaintiff since 1892, gave a description of her parcel and of the track laid over it.

Emilio Vega, also an old resident of the ward, mentioned the parcel of land and the track and stated that "Remigio Martínez Badía had called on her (the plaintiff), had called on everybody to secure the right of way for the railroad, and I think she complied with his request." He did not know for how long. He was not present. In answer to the question "Was she paid anything?," he said: "Don Remigio promised her twenty-five dollars for some trees that were to be removed for the laying of the track."

Remigio Martínez Badía, who was then called to the stand, testified, in short, that about 1910 he was an employee of the defendant engaged in the building of the track. He knew plaintiff's tract. Inocencia Picón was not willing to grant the right of way. He advised her to grant it because it was beneficial to her and to the ward. He thought that she did. "I do not know for certain whether or not any instrument was drawn. I do not know; I know that Paz Urdaz had been there, but I can not tell for certain whether any instrument was drawn . . . . . Money was paid to her for the destruction of some plants that were injured."

At the beginning of the cross-examination the witness was again asked whether any instrument had been signed and he answered: "I do not know for certain." Thereupon counsel for the defendant said to him: "And this instrument that I am showing you? . . . . . " The attorney for the plaintiff intervened with the request that he be allowed to examine the document before the cross-examination was proceeded with. The court refused. Counsel for the defendant went on:

"Q. Look at that document. This signature.—A. This is my signature.—Q. What does the signature say?—A. As a witness and at the resquest of Inocencia Picón Rivera, R. M. Badía.—Q. Did you sign that document at the request of Inocencia Picón and of Santiago Picón?—A. I did.—Q. And whose signature is it?—A. Mine.—Q. So that you also with the authorization of Inocencia Picón signed that

document?—A. I did.—Q. At her request?—A. At her request.—Q. Was the notary present there?—A. Manuel Paz Urdaz.—Q. What is stated in that document, a right of way for some time or in perpetuity? —A. In perpetuity is stated here.—Q. To. lay what?—A. To lay a railroad track.—Q. So that you now remember having been authorized to sign that document?—A. I remember, but I have signed so many; but there it is clear.''

Answering questions put to him by the judge, the witness stated that the market price of an acre of land at that place in 1910 was between twelve and fifteen dollars; that the track over the parcel in question was about seventy meters long, and the width of the track proper was thirty-six inches and that of the land pertaining thereto some four meters.

Vitaliano García was the last witness for the plaintiff. He is the treasurer and bookkeeper of the defendant. On cross-examination he testified as follows:

''Q. As such treasurer and accountant of Central Cambalache, do you keep the books of the Central?—A. I do.—Q. Will you show me page 325 of the journal?—A. Here it is.—Q. To which year does it correspond?—A. To 1910.—Q. Look up the account on that page in connection with the name of Inocencia Picón.—A. Railway Line.— Q. What does it say there?—A. Compensations paid to the following persons for plants destroyed for the laying of our railroad to Sabana Hoyos: to Inocencia Picón, as per receipt, thirty dollars; to Jacinto Ayende . . .—Q. Now look up folio 325 of the ledger.—What is that in your hands?—A. The ledger . . .—Q. See if there is on that folio an entry connected with Inocencia Picón.—A. There is an entry reading thus: Compensation paid for crops destroyed to sundries to facilitate the laying of our track, as per entry in the journal.''

The evidence for the defendant began by the presentation of the identified document which the court admitted over the objection of the plaintiff. The original of said document was transmitted to this court. It is a typewritten form with blanks left to be filled in afterwards. It reads as follows:

''I, Inocencia and Santiago Picón Rivera, of age, and residing in Arecibo, are the owners of a rural piece of property located in the ward of Sabana Hoyos, within the district of Arecibo, which

contains two acres, bounded as follows: on the north by Juan Bautista Candelaria and Gregorio Serrano; on the west by José Santiago; on the south by José Santiago; and on the east by Gregorio Ruiz.

"I hereby establish a right of way in perpetuity over the property above described in favor of the corporation domiciled here 'Central Cambalache,'organized and existing under the laws of Puerto Rico, and therefore the said Central is authorized to open a road between six and ten yards wide across the said property for the laying permanently of a railroad track for the passage of trains; which servitude is gratuitously established by me for the sum of . . . which has been fully paid by the said corporation prior to this act, for which I give this release (*carta de pago*).

"In witness whereof this instrument is drawn and signed in the ward of Sabana Hoyos, Arecibo, this 1st day of April 1910.

"As a witness and at the request of Inocencia and Santiago Picón Rivera,

R. M. Badía.

"No. 111.

"Sworn to an subscribed before me by Inocencia and Santiago Picón Rivera, who are the persons above described and personally known to me, this 1st day of April, 1910.

Manuel Paz Urdaz,
Notary Public.

"There is a notarial seal but no internal revenue stamps."

The word "gratuitously" appears handwritten between lines, and the words "for the sum of . . . which has been fully paid by the said corporation prior to this act, for which I give this release," were crossed out with ink.

Andrés Ruiz then testified. He stated that the plaintiff's tract formerly contained two acres. At present it measures one acre. The track crosses it from one side to the other along the center.

The next witness was Cesáreo García, an employee of the defendant. He testified that the tract "contained two acres of land at the time of the establishment of the servitude." The owners were Inocencia and Santiago Picón. It was reduced to one acre owned by Inocencia. It is crossed by

the railroad track of the defendant by virtue "of a servitude granted by Santiago and Inocencia Picón."

He had talked with the plaintiff on several occasions, "on one of them personally when I called on her to ask her to come and sign a deed of servitude, because what she had signed before was an affidavit and we wanted to have a deed duly executed in order to record the same in the registry, and Inocencia's answer was that, what more servitude was needed than to have the track laid over the parcel; that she had granted that servitude, that she was a woman of her word, and that she was not going to make any more deeds. On another occasion also, being advised that she was trying, or was said to be trying, to sell the parcel, the acre, where she had her little house, she was then asked if she would be willing to exchange her acre of land for another acre close to the road leading from Sabana Hoyos to San Juan, with a frame house rather large and somewhat better than the one on her parcel at present, and her answer was the same, that she did not want to exchange the land, and that we should not worry because she had granted the railroad right of way and that the track crossed her parcel and that she would do no more nor was she willing to make an exchange of land at all; that she hoped to die where she had lived nearly all her life."

That the track had been built since 1910 with money of the Central, and is permanent and visible. It covers a surface eighty meters long by four and a half meters wide. The cost of the track per kilometer was about ten thousand four hundred dollars.

On cross-examination by the attorney for the plaintiff, he stated that he knew that the parcel contained two acres:

"Because it appears from a document and from statements that not once but several times I, personally went with Manuel Paz Urdaz, to have the deed signed; that I have stated that before; that the same boundaries of the parcel have been stated several times.—Q. Then the deed which you say you were seeking, did you seek it to-

gether with Notary Paz Urdaz?—A. That was a long time ago.—Q. Do you know that Paz Urdaz died?—A. I do.—Q. Has he been dead more than twelve or fifteen years?—A. Yes, sir.—That was shortly after, for the purpose of recording the servitude, not once but several times; and Doña Inocencia's answer was that it was her way to say a thing only once; and that, why did they want a deed if the track was laid on the land. This was her usual answer.—Q. Did you offer her to exchange the parcel for another?—A. I did; at the end.—Q. When was that?—A. About two years ago. Something like that.— Q. More or less?—A. Yes.—Q. Was she not willing to make the exchange?—A. She was not; she would always say that she had lived so many years on that land, that she did not want to leave it, and that she would die there.''

Emilio Canals testified that he had built the whole railroad track of which the one in controversy is a part. That Inocencia and Santiago Picón constituted a servitude in favor of Central Cambalache. That the track is a permanent one, thirty inches wide, on iron sleepers and cost between eight and ten thousand dollars per kilometer. It was built between April and October of 1910. They would get permission from the property owners. The permits were obtained prior to the construction.

Cesáreo García was called again to the stand, and with his testimony the evidence for the defendant was closed. He stated that the trains began to run in 1910 over the property of Inocencia Picón. ''From April. Already in the month of April the engines were passing over that land.''

In rebuttal the plaintiff called again her witness Emilio Vega, who testified that the laying of the track took two or three months after the granting of the permit by the plaintiff, and Juan Ayende, who stated that he granted permission for the track to be laid on his land on the same day that the plaintiff gave her permission, and that it took three months to lay the track on his property. On cross-examination, he testified that the plaintiff's parcel is nearer the sugar factory than his property, and that the track could reach the plaintiff's land without touching his.

The evidence in the present case was thus closed. The trial court weighed the same and found that—

".... on the 1st of April 1910, the Picón Rivera brothers executed before Notary Manuel Paz Urdaz an instrument whereby they, as owners of a two-acre parcel of land located in the ward of Sabana Hoyos of Arecibo, established a servitude of passage in perpetuity over their tenement in favor of Central Cambalache, Inc., a corporation, so that the said entity might lay permanently over the servient tenement a railroad track for the passage of trains.

".... the defendant, Central Cambalache, Inc., paid to the Picón Rivera brothers the sum of thirty dollars as compensation.

".... by virtue of the instrument executed in its favor by the Picón Rivera brothers, the defendant built and laid a railroad track in 1910 for the transportation of cane and other products, across the parcel belonging to the above persons.

"... subsequent to the granting of the servitude, the Picón Rivera brothers divided between them the property which they held in common, each of them receiving an acre. Santiago segregated and sold his acre, there remaining the acre that belonged to Inocencia.

".... the land in the ward of Sabana Hoyos crossed by the track of the defendant, was worth in 1910 from twelve to fifteen dollars per acre.

".... the approximate cost per kilometer of the track when laid was from eight to ten thousand dollars, and, within six months from the granting of the servitude, the defendant had built nine kilometers of track in that neighborhood.

"There is no doubt that Inocencia and Santiago Picón Rivera executed on April 1, 1910, an instrument, acknowledged before a notary, whereby they granted to Central Cambalache, Inc., a permanent right of way over their tenement. Although it appears from the said instrument that it was a gratuitous grant, however, the evidence showed that the defendant paid them thirty dollars as compensation."

Based on the above findings, and after a study of the law and the jurisprudence which it deemed applicable, and considering "that the instrument introduced in evidence by the defendant is a valid and effective one in law for acquiring the servitude which is involved in this suit," the court rendered judgment for the defendant, without special imposition of costs.

Thereupon the plaintiff took an appeal from that judgment. She mantains that the trial court erred in admitting in evidence the instrument dated April 1, 1910; in admitting evidence regarding the money expended by the defendant in the building of the track; and in weighing the evidence.

We will not go into an examination or determination of the first two errors assigned.

Conceding without holding that the instrument in question and the testimony regarding the outlay of funds for the general work of building the railroad were admissible in evidence, we will stop to consider the weighing of the evidence, that is, the questions comprised in the third assignment of error.

█ In the first place, we will disregard the question of prescription as a means of acquiring the servitude, since it has been held by this court that the servitude involved in this action is one of passage which, although apparent, is not continuous and therefore can only be acquired by virtue of a title. Section 475 of the Civil Code, 1930 ed.; *Martínez* v. *Central Cambalache, Inc., ante,* p. 208; *González* v. *Plazuela Sugar Co.,* 42 P.R.R. 676.

█ Is the instrument introduced by the defendant a valid title? After a careful consideration of it and of all the circumstances brought out by the evidence heard, we think that it is not.

The weighing of the evidence does not show passion, prejudice, or bias, but it does show a manifest error committed by the court by reason perhaps of the small value of the land and the lateness of the claim.

Let us consider the instrument by itself. Notary Paz Urdaz stated that it was "subscribed and sworn to" before him "by Inocencia and Santiago Picón Rivera." We know how it was signed: "As a witness and at the request of Inocencia and Santiago Picón Rivera, R. M. Badía." It is not stated that the intervention of Badía was necessary. It is by the trial that we are advised that Inocencia and Santiago

do not know how to write. The marks of the persons in whose behalf Badía signed do not appear. It does not appear that the instrument that had been already drafted by the agents of the defendant was read to the plaintiff before it was signed. Badía testified, and he was not cross-examined either on that point or on any others that might have explained the transaction.

It appears from the instrument that the servitude had been established gratuitously. Notwithstanding this, the trial judge concludes that the defendant paid to the plaintiff thirty dollars as compensation. The conclusion of the court is not only at variance with the terms of the instrument but also with the repeated statements of the witnesses for the plaintiff and with the contemporaneous entries made by the defendant itself on its books. The money was paid exclusively as compensation for the crops growing on the land crossed by the track and not for the servitude.

The conclusion is very important, because the grant being a gratuitous one it constitutes a gift of real property which requires for its validity the execution of a public instrument, and we do not think that it might even be suggested that the instrument in question is the public instrument required by the provisions of section 575 of the Civil Code, 1930 ed.

The testimony of the plaintiff appeals strongly to the mind of the judge. Likewise that of her brother and that of Badía. The very evidence of the defendant is in many points adverse to its claims. For instance, the testimony of its witness García brings out the clear notion that the defendant itself had of the weakness of its title and its efforts to show the prescription which was absolutely unnecessary if the title was sufficient. As regards the former, we must bear in mind, the insistence of the defendant in securing from the plaintiff a true public instrument, going so far as to propose to her the exchange of her property for another seemingly better. In regard to the latter, we must take into account the last statement of the witness made after the

attorney for the plaintiff had expressed his intention to show that the twenty years required in the case that a servitude could be acquired by prescription had not elapsed. The witness then went so far as to assert that the trains were running over the track built on plaintiff's land, not since June, but since April 1910.

Perhaps it is not true that the plaintiff, at the time of granting the permit, did not fix the term of four years, but it clearly appears from the evidence that it is not true, either, that she consciously established a servitude in perpetuity. Undoubtedly the grant was an indeterminate permit and, therefore, insufficient for establishing definitely a servitude.

The defendant has none to blame but itself, because having all the means at its disposal, in order to save perhaps a small sum of money, it secured an informal grant instead of a clear, final title.

It is to avoid in the future situations like this that the law required that a servitude be established so that its duration may not be thereafter questioned.

As to the claim that, in accordance with the decisions cited by the plaintiff, taking into consideration the time elapsed and her attitude in allowing the building of the track at considerable expense, she is at least estopped from taking action, it is sufficient to say that the case is governed by the provisions of the Civil Code, and that the true circumstances therefor do not place it on the ground on which the defendant has sought to put it.

The railroad of the defendant is a private and not a public road. The plaintiff was not the owner of a large tract of land who by planting cane might be benefited by reason of the greater facility in transportation of her produce. She owned only a single acre, divided and reduced in extent by the track, which she could not use for traveling or for the transportation of small crops produced in her

farm. The time elapsed is explained by the self-same ignorance and poverty of the plaintiff.

No condemnation is too severe for litigation initiated in bad faith, claiming rights already granted, and based on inadvertent omissions or those due to the mutual trust between the parties, or on mere technicalities. Such suits are really frauds which should not be countenanced by the courts. After careful consideration we are unable to conclude that the instant case belongs to that class of litigation. Undoubtedly, someone versed in the law must have opened plaintiff's eyes. But if she opened her eyes to find that she had been unfairly treated, and that she is entitled to her land free from encumbrances, then it is incumbent on the courts to protect and enforce her claim. Dealings between men ought from the beginning to be open and fair. They should not be allowed to take undue advantage of each other. The law must be enforced.

In the instant case, the law provides that the servitudes which the defendant has been enjoying can be acquired only by a public deed. The defendant has failed to show such title, and the evidence taken as a whole shows rather a vague license than a permanent, final title.

In accordance, therefore, with the facts and the law, the action of denial of servitude which has been prosecuted lies, and a judgment must be rendered declaring that the property is free from the encumbrance, ordering the removal of the track within six months from the entry of the judgment of this court on the books of the District Court of Arecibo, with costs.

Mr. Justice Hutchison and Mr. Justice Córdova Dávila do not concur in the characterization as discontinuous applied in the opinion to the railroad right of way which, in their judgment, is continuous as expressed in the dissenting opinion of Mr. Justice Córdova, concurred in by Mr. Justice Hutchison, in *Martínez* v. *Central Cambalache, Inc., ante,* p. 208.